# IN THE UNITED STATES DISTRICT COURT FOR THE
# EASTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| MARY L. BUSH, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case No. CIV-06-344-SPS |
| | ) |
| MICHAEL J. ASTRUE, | ) |
| Commissioner of the Social Security | ) |
| Administration, | ) |
| | ) |
| Defendant. | ) |

## OPINION AND ORDER

The claimant Mary L. Bush requests judicial review pursuant to 42 U.S.C. § 405(g) of the decision of the Commissioner of the Social Security Administration ("Commissioner") denying her application for benefits under the Social Security Act. The claimant appeals the decision of the Commissioner and asserts that the Administrative Law Judge ("ALJ") erred in determining she was not disabled. For the reasons discussed below, the Commissioner's decision is REVERSED and REMANDED for further proceedings.

### Social Security Law and Standard of Review

Disability under the Social Security Act is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment. . . ." 42 U.S.C. § 423(d)(1)(A). A claimant is disabled under the Social Security Act only "if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the

national economy. . . ." *Id.* § 423(d)(2)(A). Social security regulations implement a five-step sequential process to evaluate a disability claim. *See* 20 C.F.R. §§ 404.1520, 416.920.[1]

Judicial review of the Commissioner's determination is limited in scope by 42 U.S.C. § 405(g). This Court's review is limited to two inquiries: first, whether the decision was supported by substantial evidence; and, second, whether the correct legal standards were applied. *Hawkins v. Chater*, 113 F.3d 1162, 1164 (10th Cir. 1997), *citing Pacheco v. Sullivan*, 931 F.2d 695, 696 (10th Cir. 1991). The term substantial evidence has been interpreted by the United States Supreme Court to require "'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Richardson v. Perales*, 402 U.S. 389, 401 (1971), *quoting Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938). The Court may not reweigh the evidence nor substitute its discretion for that of the agency. *Casias v. Secretary of Health & Human Services*, 933 F.2d 799, 800 (10th Cir. 1991). Nevertheless, the Court must review the record as a whole, and "[t]he substantiality of [the] evidence must take into account whatever in the

---

[1] Step one requires the claimant to establish she is not engaged in substantial gainful activity, as defined by 20 C.F.R. §§ 404.1510, 416.910. Step two requires the claimant to establish she has a medically severe impairment (or combination of impairments) that significantly limits her ability to do basic work activities. *Id*. §§ 404.1521, 416.921. If the claimant is engaged in substantial gainful activity, or if her impairment is not medically severe, disability benefits are denied. At step three, the claimant's impairment is compared with certain impairments listed in 20 C.F.R. pt. 404, subpt. P, app. 1. If the claimant suffers from a listed impairment (or impairments "medically equivalent" to a listed impairment), she is determined to be disabled without further inquiry. Otherwise, the evaluation proceeds to step four, where the claimant must show she does not retain the residual functional capacity (RFC) to perform her past relevant work. The burden then shifts to the Commissioner to establish at step five that there is work she can perform existing in significant numbers in the national economy, taking into account the claimant's age, education, work experience and RFC. Disability benefits are denied if the Commissioner shows that the claimant's impairment does not preclude alternative work. *See generally Williams v. Bowen*, 844 F.2d 748, 750-51 (10th Cir. 1988).

record fairly detracts from its weight." *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 488 (1951); *see also Casias*, 933 F.2d at 800-01.

## Claimant's Background

The claimant was born on September 6, 1956, and was forty-eight (48) years old at the time of the administrative hearing. She has a high school education and vocational training to be an emergency medical technician. She has previously worked as a hand packager, spray painter, aide attendant, nurse's aide, emergency medical technician and pneumatic riveter. She alleges she has been unable to work since May 19, 2003, because of heart trouble and degenerative disc disease.

## Procedural History

The claimant protectively filed an application for supplemental security income payments under the Title XVI of the Social Security Act, 42 U.S.C. §§ 1381-1385, on March 19, 2004, and an application for disability benefits under Title II of the Social Security Act, 42 U.S.C. §§ 401-434, on April 16, 2004. The applications were denied. ALJ Lantz McClain conducted a hearing and found the claimant was not disabled on March 23, 2006. The Appeals Council denied review, so the ALJ's decision represents the Commissioner's final decision for purposes of this appeal. 20 C.F.R. §§ 404.981, 416.1481.

## Decision of the Administrative Law Judge

The ALJ made his decision at step five of the sequential evaluation. He determined that the claimant had the residual functional capacity ("RFC") to perform sedentary work, *i. e.*, lifting no more than ten pounds at a time with occasional lifting/carrying of items like

docket files, ledgers and small tools. The claimant was further limited to only occasional bending and stooping. The ALJ concluded that although the claimant could not return to her past relevant work, she was nevertheless not disabled because there was work in the regional and national economies she could perform, *e. g.*, assembler, hand worker, and clerical worker (Tr. 22).

**Review**

The claimant contends that the ALJ erred: (i) by improperly evaluating the medical evidence from her treating physician, Dr. Stephen Woodson; and, (ii) by finding she had the RFC to perform substantial gainful activity. The Court finds the claimant's first contention persuasive.

The record reveals that Dr. Woodson treated the claimant during the period under review for benefits (Tr. 388-430, 441-42, 468-72) and for twelve to fifteen years prior to her alleged onset date (Tr. 495). He indicated in a letter from April 2004 that the claimant had "multiple health problems, including a myocardial infarction with stint placement, . . . hypertension, previous renal lithiasis', and back pain secondary to L5-S1 disc disease." Dr. Woodson recommended the claimant avoid excessive stress (Tr. 390). In another letter from August 2004, Dr. Woodson opined that the claimant was "totally and completely disabled and [would] remain so for the future." (Tr. 389). Dr. Woodson completed a medical source statement evaluating the claimant's physical impairments in August 2005. He found that the claimant could lift and/or carry ten pounds occasionally and one to two pounds frequently; stand and/or walk for 15-30 minutes in an eight-hour workday; sit for two hours in and eight-

hour workday; had to lie down to manage pain during the workday; and was limited in pushing and/or pulling. He imposed limitations that the claimant could frequently reach, finger, and feel; occasionally crawl and handle; and never climb, balance, stoop, kneel, or crouch. She had environmental restrictions, including exposure to temperature extremes, fumes, humidity, and vibrations (Tr. 469-70). Dr. Woodson's findings were based on the claimant's herniated disc at L5-S1 (per MRI) and "pain so severe she [could not] move or function." (Tr. 470). In a letter of the same date, he noted the claimant suffered from heart disease and pain from a herniated disc. He suggested she avoid any unnecessary physical or emotional stress (Tr. 468). Dr. Woodson's opinion as to the claimant's physical limitations was thus substantially at odds with the RFC adopted by the ALJ.

The ALJ seems to have lumped all of Dr. Woodson's opinions into one conclusory opinion: "Dr. Woodson opined that the claimant was unable to perform sedentary work, and [was] totally disabled due to both physical and emotional stress." (Tr. 21). The ALJ apparently rejected all of Dr. Woodson's discrete opinions because: (i) he concluded that the claimant was disabled, which was a determination reserved to the Commissioner; (ii) his opinions were inconsistent with his own treatment notes; and, (iii) his opinions were unsupported by "detailed, clinical, and diagnostic evidence." The ALJ's treatment of Dr. Woodson's opinions was deficient for a number of reasons.

First, the ALJ correctly observed that whether the claimant is disabled is an issue reserved solely to the Commissioner. *See* 20 C.F.R. §§ 404.1527(e)(1), (2), 416.927(e)(1), (2) (noting that opinions that claimant is disabled or that an impairment meets or equals the

requirements of any impairment in the Listing of Impairments "are not medical opinions, as described in paragraph (a)(2) of this section, but are, instead, opinions on issues reserved to the Commissioner because they are administrative findings that are dispositive of a case; *i. e.*, that would direct the determination or decision of disability." *Id.* §§ 404.1527(e), 416.927(e)). But Dr. Woodson's treatment notes and letters (including his diagnoses of the claimant's conditions) and the medical source statement (including his opinions as to the claimant's physical restrictions) were all medical opinions the ALJ should have considered under the treating physician rule. *See* 20 C.F.R. §§ 404.1527(a)(2), 416.927(a)(2) ("Medical opinions are statements from physicians . . . that reflect judgments about the nature and severity of [a claimant's] impairment(s), including . . . symptoms, diagnosis and prognosis, what [a claimant] can still do despite impairment(s), and . . . physical or mental restrictions.").

Second, these medical opinions expressed by Dr. Woodson were entitled to controlling weight if "'well-supported by medically acceptable clinical and laboratory diagnostic techniques . . .[and] consistent with other substantial evidence in the record.'" *See Langley v. Barnhart*, 373 F.3d 1116, 1119 (10th Cir. 2004), *quoting Watkins v. Barnhart*, 350 F.3d 1297, 1300 (10th Cir. 2003). Here, the ALJ identified portions of Dr. Woodson's treatment notes he deemed inconsistent with his conclusions and found his opinions were not supported by "detailed, clinical and diagnostic evidence." But if Dr. Woodson's opinions lacked sufficient support from "detailed, clinical and diagnostic evidence," the ALJ should have recontacted Dr. Woodson for clarification rather than (or at least before) rejecting those

opinions outright. *See, e. g., Robinson v. Barnhart*, 366 F.3d 1078, 1084 (10th Cir. 2004) ("If the ALJ concluded that Dr. Baca failed to provide sufficient support for his conclusions about the claimant's . . . limitations, the severity of those limitations, [or] the effect of those limitations on her ability to work . . . he should have contacted Dr. Baca for clarification of his opinion before rejecting it."). *See also* 20 C.F.R. §§ 404.1512(e)(1), 416.912(e)(1) ("We will seek additional evidence or clarification from your medical source when the report from your medical source contains a conflict or ambiguity that must be resolved, the report does not contain all the necessary information, *or does not appear to be based on medically acceptable clinical and laboratory diagnostic techniques*.") [emphasis added].

Third, even if Dr. Woodson's medical opinions were not entitled to controlling weight, the ALJ was required to determine the proper weight to give them by analyzing *all* of the factors set forth in 20 C.F.R. §§ 404.1527, 416.927. *See Langley,* 373 F.3d at 1119 ("Even if a treating physician's opinion is not entitled to controlling weight, '[t]reating source medical opinions are still entitled to deference and must be weighed using all of the factors provided in § 404.1527 [and § 416.927].'"), *quoting Watkins*, 350 F.3d at 1300. Those factors are: (i) the length of the treatment relationship and the frequency of examination; (ii) the nature and extent of the treatment relationship, including the treatment provided and the kind of examination or testing performed; (iii) the degree to which the physician's opinion is supported by relevant evidence; (iv) consistency between the opinion and the record as a whole; (v) whether or not the physician is a specialist in the area upon which an opinion is rendered; and, (vi) other factors brought to the ALJ's attention which

tend to support or contradict the opinion. *Watkins,* 350 F.3d at 1300-01, *citing Drapeau v. Massanari,* 255 F.3d 1211, 1213 (10th Cir. 2001) [quotation omitted]. Further, in order to reject the opinions of a treating physician such as Dr. Woodson entirely, the ALJ was required to "give specific, legitimate reasons for doing so." *Id.* at 1301 [quotations omitted]. The ALJ failed to provide any of the detailed analysis required for outright rejection of Dr. Woodson's medical opinions.

Fourth, the ALJ chose to adopt the opinions of the non-examining agency physicians "that the claimant was capable of sedentary work activity" without any explanation for doing so. This is erroneous because the ALJ was required to explain why he adopted a non-examining physician's opinion over that of the claimant's treating physician. *Robinson v. Barnhart*, 366 F.3d 1078, 1084 (10th Cir. 2004) ("The opinion of an examining physician is generally entitled to less weight than that of a treating physician, and the opinion of an agency physician who has never seen the claimant is entitled to the least weight of all. Thus, the ALJ erred in rejecting the treating-physician opinion of Dr. Baca in favor of the non-examining, consulting-physician opinion of Dr. Walker absent a legally sufficient explanation for doing so."), *citing* 20 C.F.R. §§ 404.1527(d)(1), (2) & 416.927(1), (2); Soc. Sec. R. 96-6p, 1996 WL 374180, at *2.

Accordingly, the decision of the Commissioner must be reversed and the case remanded to the ALJ for a proper analysis of the opinions expressed by Dr. Woodson. On remand, the ALJ should recontact Dr. Woodson for any explanation the ALJ feels is needed and reconsider his opinions in accordance with the appropriate standards. If this analysis

alters the claimant's RFC, the ALJ should then redetermine what work, if any, the claimant can perform and ultimately whether she is disabled.

## Conclusion

As set forth above, the Court finds that correct legal standards were not applied by the ALJ and the decision of the Commissioner is therefore not supported by substantial evidence. Accordingly, the decision of the Commissioner is hereby REVERSED and the case REMANDED for further proceedings consistent with this Opinion and Order.

**DATED** this 28th day of September, 2007.

_____
**STEVEN P. SHREDER**
**UNITED STATES MAGISTRATE JUDGE**